**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF SAINT CROIX**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 1:23-17**[1] |
| **ABIJAH ISAAC,** | : | **(JUDGE MANNION)** |
| **Defendant** | : | |

**MEMORANDUM**

Pending before the court is the defendant's motion to dismiss the information, (Doc. 10), for a violation of his right to a speedy trial, pursuant to the Speedy Trial Act and the Sixth Amendment. (**Doc. 109**). For the reasons stated herein, the motion will be **GRANTED**, and the information will be **DISMISSED WITHOUT PREJUDICE**.

## I.    BACKGROUND

On December 12, 2023, an amended information was issued, charging defendant Abijah Isaac and his co-defendant Keshawnn Kirby, who is now deceased, with attempted Hobbs Act robbery and conspiracy to commit Hobbs Act robbery, both in violation of 18 U.S.C. §1951(a) & §2; as well as using, carrying, and brandishing firearms during and in furtherance of a crime

---

[1] This case was reassigned to the undersigned on March 5, 2026. (Doc. 108).

of violence, and conspiracy to brandish firearms during and in relation to a crime of violence, both in violation of 18 U.S.C. §924(c)(1)(A) and §2, as well as 18 U.S.C. §371. (Doc. 10). The charges stem from an alleged attempted armed robbery of a gold chain from an individual. *Id.*

On March 30, 2026, the defendant filed the present motion to dismiss the information for violation of his right to a speedy trial. (Doc. 109). On April 24, 2026, the Government filed its brief in opposition to the motion. (Doc. 113). Finally, on May 8, 2026, the defendant filed a reply brief to the Government's brief in opposition. (Doc. 114). The motion is now ripe for disposition.

## II.    DISCUSSION

### A. Speedy Trial Act

The Speedy Trial Act, codified at 18 U.S.C. §§3161-3174, provides that:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. §3161(c)(1). However, certain days are excluded when calculating the speedy trial clock, including delays:

> [1] resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of such motion . . . [2] reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court . . . [and] [3] resulting from a continuance granted by any judge . . . on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. §3161(h)(1)(D), (h)(1)(H), (h)(7)(A).

Here, the defendant was arraigned on December 21, 2023, meaning that the speedy trial clock began running the next day. (Doc. 33); *United States v. Lattany*, 982 F.2d 866, 871 (3d Cir. 1992) (excluding the day of arraignment from calculation). Apart from January 17, 2024, when the court held a calendar call, (Doc. 34), the clock ran until February 2, 2024, when the Government filed a motion to continue trial for thirty days to facilitate plea negotiations. (Doc. 36). The court granted the motion that same day, finding that "the ends of justice is served by continuing the trial" and that time

"through the date of the trial shall be excluded." (Doc. 37). At that point, forty-one days had accrued.

On May 15, 2024, in a calendar call with the court, the Government, by its own admission in its brief in opposition, "advised the Court (and defense counsel) that it believed the Speedy Trial Act clock had expired." (Doc. 113 at 2). Just over a month later, on June 24, 2024, the defendant filed a motion to dismiss for speedy trial violations, and on March 3, 2025, he filed a second. (Docs. 78, 91). The Government properly responded to those motions. (Docs. 84, 95). However, they were never ruled upon by the court and therefore dismissed as moot by this court on April 2, 2026, due to the filing of the present third motion to dismiss for speedy trial. (Doc. 112).

Thus, the question is whether the court's February 2, 2024, order, (Doc. 37), providing that "[t]he time beginning from the date of this Order through the date of the trial shall be excluded in computing the time within which a trial must be initiated pursuant to 18 U.S.C. §3161," remained valid indefinitely. The court finds that it did not.

To determine whether an open-ended ends-of-justice continuance remains valid, the court must assess whether the continuance remains reasonable. *Lattany*, 982 F.2d at 882 ("we must decide whether the delays that resulted from the district court's open-ended continuance and its

- 4 -

subsequent extension are reasonable under the particular circumstances of this case"). Here, the continuance must be rendered no longer reasonable, and therefore no longer valid. While the Government asserts that the continuance remained valid until April 2, 2026, the date that defense counsel formally acknowledged that it was not accepting a plea offer, the fact of the matter is that plea negotiations appeared to have ceased in May of 2024. Indeed, the Government implicitly acknowledged that the continuance order was no longer valid on May 15, 2024, when it advised the court that the speedy trial deadline had passed. Given this representation, it is reasonable to believe that the clock began running again sometime on or before April 16, 2024, the latest date from which seventy-days could have accrued by the date the Government asserted the deadline had passed. This acknowledgment implies that the Government believed that the purpose of the order—to facilitate plea negotiations—had run its course. The Government now argues that because defense counsel had difficulties contacting his client, and that the Government had offered a plea agreement which had expired without indication that it would be re-issued, plea negotiations remained ongoing.

Furthermore, for the sake of discussion, even if the Government was mistaken and the clock had not yet resumed on, let alone run by, May 15,

- 5 -

2024, and even if the clock remained frozen following the calendar call that day, the defendant's June 24, 2024, motion to dismiss for a speedy trial violation certainly put both the court and the Government on notice that the open-ended continuance had run its course. It appears to be unreasonable to believe that the continuance remained in effect at this point. Moreover, assuming that the defendant was mistaken that the clock had run at this point, as the delays under the continuance may have been "reasonable" under *Lattany*, it had certainly run by the time he filed his second motion to dismiss on March 3, 2025.

Under 18 U.S.C. §3161(h)(1)(H), "any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court" is excluded from the calculation of the speedy trial deadline. Briefing for the June 24, 2024, motion to dismiss concluded on August 14, 2024. (Doc. 90). Therefore, the excludable "under advisement" period ran through September 13, 2024. On September 14, 2024, the clock started tolling again. Given that forty-one days had tolled prior to the continuance order, and assuming that no time tolled between the continuance order and the filing of the motion, the seventy-day timeframe to prosecute the case concluded on October 12, 2024. Further, by the time the defendant filed his second motion to dismiss on March 3, 2025,

- 6 -

approximately 211 days had elapsed. The court need not calculate the time that accrued since then, as a speedy trial act violation is clear, and dismissal is required.

However, the court must consider whether the dismissal should be with or without prejudice. In doing so, the court is required to consider three factors: (1) "the seriousness of the offense," (2) "the facts and circumstances of the case which led to the dismissal," and (3) "the impact of a reprosecution on the administration of this chapter and on the administration of justice.' 18 U.S.C. §3162(a)(2); see also United States v. Taylor, 487 U.S. 326, 333-36 (1988) (analyzing the factors).

With respect to the first factor, the charged offenses—Hobbs Act robbery and firearms offenses—are indisputably serious. The charged conduct is violent in nature and carries a potentially lengthy prison sentence if convicted. Indeed, the defendant "acknowledges the seriousness of the charges." (Doc. 109 at 14).

Turning to the second factor, the facts and circumstances weigh in favor of dismissal without prejudice. "This factor requires courts to consider the reasons for the delay: did it stem from 'intentional dilatory conduct' or a 'pattern of neglect on the part of the Government,' or rather, from a relatively benign hitch in the prosecutorial process?" United States v. Stevenson, 332

F.3d 412, 420 (3d Cir. 2016) (internal citations omitted). Here, the delay is the result of a culmination of misunderstandings and miscommunications among counsel, the defendant, and the court. There is no evidence of bad faith, intentional delay, or a pattern of neglect on the part of the Government. Indeed, as the Government notes in its brief, it "has answered every motion filed, provided discovery to newly appointed counsel, engaged in attempts to resolve the matter, and even located the defendant for counsel," (Doc. 113 at 11), whose unknown location contributed to the delay. Furthermore, a plain reading of the court's ends-of-justice continuance order could support a rational, albeit incorrect, conclusion that the speedy trial deadline had not yet passed. The court also notes that while the Government did indicate to the court that the clock had run in May of 2024, the Government could have rationally concluded that it erred in its assessment and adopted the position it now takes. In other words, the Government's contradictory positions do not appear to be indicative of bad faith. Given these circumstances, the second factor weighs in favor of dismissal without prejudice.

Finally, in assessing the third factor, the court must determine "whether the defendant suffered actual prejudice as a result of the delay and whether the government engaged in prosecutorial misconduct that must be deterred to ensure compliance with the Act." *Stevenson*, 832 F.3d at 422 (internal

- 8 -

citations omitted). As noted in the court's analysis of the second factor, there is no evidence that the Government engaged in prosecutorial misconduct. As for whether the defendant suffered actual prejudice, he argues that he has because the "alleged offense conduct occurred on December 2, 2018 . . . [and because] [t]he Government waited until December 1, 2023, a full day before the five-year statute of limitations expired, to file charges." (Doc. 109 at 12). Because of these delays, "[w]itnesses' memories have faded or been lost entirely . . . [and] [t]he passage of time has also prejudiced [his] ability to retain exculpatory evidence, locate witnesses, and present a meaningful defense." *Id.* Moreover, "[t]he co-defendant who would have been the Government's primary cooperator, Keshawnn Kirby, was murdered on June 19, 2024." *Id.*

While the defendant emphasizes that it has been over seven years since the alleged conduct, the Government was within its right to charge him within the statute of limitations, which it did. Furthermore, the defendant's assertions of prejudice are unspecific and speculative. He cites no particular prejudice, instead relying on general claims that may or may not be true. Indeed, he cites his lack of ability to retain exculpatory evidence, but provides no detail thereof, even in his reply brief after the Government noted the lack of specificity. His scattershot approach to asserting prejudice is best

demonstrated by his assertion that co-defendant Kirby's death prejudices him, while acknowledging that Kirby would have cooperated *against* him. Thus, the court finds no basis to conclude that the defendant suffered *actual* prejudice, i.e., identifiable prejudice, as required by the law.

Thus, upon weighing the relevant factors, dismissal without prejudice is the appropriate remedy.

### B. Sixth Amendment

While the delay constitutes a violation of the Speedy Trial Act, it does not constitute a violation of the Speedy Trial Clause of the Sixth Amendment. To determine whether a Sixth Amendment violation occurred, courts balance: (1) "[l]ength of the delay," (2) "the reason for the delay," (3) "the defendant's assertion of his right," and (4) "prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

Here, the first and third factors weigh in favor of the defendant. There has been a 29-month delay from arraignment until now. Moreover, while a defendant retains some responsibility to assert his right to a speedy trial the burden does not rest solely upon him, as the Government has a duty to try the case. *United States v. Velazquez*, 749 F.3d 161, 182 (3d Cir. 2014) ("a defendant's limited responsibility to assert his speedy trial right exists alongside the government's overarching burden to prove waiver of that

- 10 -

fundamental right"); *Barker v. Wingo*, 407 U.S. 514 (1972) ("the rule we announce today, which comports with constitutional principles, places the primary burden on the courts and the prosecutors to assure that cases are brought to trial"). Furthermore, in analyzing whether a defendant asserted their right, the court should consider the particular circumstances. For example, a defendant who benefits from the Government failing to timely prosecute, effectively acquiescing to the delay, only to assert their right via a motion to dismiss at a later stage differs substantially from a defendant who brings their motion to dismiss soon after the speedy trial clock expires. *See Barker*, 407 U.S. at 529 (clarifying that its allowing courts to exercise judicial discretion based on the circumstances when assessing this factor "would permit, for example, a court to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client, or from a situation in which no counsel is appointed. It would also allow a court to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely pro forma objection'); *see also Kennedy v. Superintendent Dallas SCI*, 50 F.4th 377, 383 ("Our case law provides guidance as to the degree of persistence that satisfies this standard. At one extreme, in *Government of the Virgin Islands v. Pemberton*, 813 F.32d626

- 11 -

(3d Cir. 1987), the defendant—represented by counsel—made no objections at all during a sixteen-month delay; hence, this third factor weighed heavily in favor of the government . . . At the other end of the spectrum, in *Hakeem* [*v. Beyer*, 990 F.2d 750 (3d Cir. 1993)], the petitioner successfully invoked the right: he asserted it in a *pro se* letter to the state court, and then again in a petition filed in the federal court one month before his trial began").

Here, the defendant did not acquiesce to the delay. Indeed, the defendant filed his first motion to dismiss on June 24, 2024, shortly after the Government notified the court that the clock had run. The defendant persisted by filing two more such motions. *See United States v. Loud Hawk*, 474 U.S. 302, 314 (1986) (finding that a defendant "repeatedly mov[ing] for dismissal on speedy trial grounds" is "'entitled to strong evidentiary weight' in determining whether their rights to a speedy trial have been denied . . . These assertions, however, must be viewed in light of [the defendant's] other conduct") (internal citation omitted). He did not, by contrast, quietly enjoy a delay in his prosecution only to conveniently assert his right once the Government took steps to prosecute. Therefore, his actions satisfied the third factor, even though he did not affirmatively ask the Government to try him quicker before he filed his initial motion to dismiss, which was, in effect, an assertion of his right.

However, the second and fourth factors weigh in favor of the Government. As discussed above, the circumstances that led to the delay do not involve bad faith or misconduct on the part of the Government, nor did the defendant suffer actual, identifiable prejudice. Indeed, the Government's conduct has been, from the court's perspective, cooperative. The Government just recently helped defense counsel locate the defendant and gave the defendant the opportunity to formally reject its plea offer as recently as April 2, 2026. This suggests that the delay in trying this case does not result from misconduct, but from, as the court stated above, a culmination of misunderstandings and miscommunications among counsel, the defendant, and the court.

Thus, upon balancing the factors, the court finds that the lack of prejudice to the defendant and of bad faith on the part of the Government outweigh the defendant's assertion of his right coupled with the lengthy delay. Simply put, the court finds that the defendant did not suffer a Sixth Amendment violation.

### III.    CONCLUSION

For the aforementioned reasons, the defendant's motion to dismiss the information for a violation of his right to a speedy trial will be **GRANTED**, and the information will be **DISMISSED WITHOUT PREJUDICE**. Pursuant to 18

U.S.C. §3288, given that the information will be dismissed and the statute of limitations has expired, "a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date of the dismissal of the . . . information." An appropriate order shall issue.

_____

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 6/11/26

23-17-01

- 14 -